ARBUCKLE BROS. *v.* UNITED STATES (No. 739).[1]

PAY OF WATCHMEN ON VESSELS LIGHTERED OF CARGOES.

The Secretary of the Treasury has plenary power by statute to superintend the collection of duties or imposts and tonnage and to prescribe regulations not inconsistent with law to prevent frauds upon the customs revenue. He may authorize his agents, in the discharge of their duties, to insist that all cargoes should be actually landed for inspection, and in permitting the discharge of cargoes upon lighters he is granting a privilege to the importer. In the exercise of this privilege by the importer he suffers no wrong in being required to pay for watchmen's services.

United States Court of Customs Appeals, March 26, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26149 (T. D. 31774).

[Affirmed.]

*Comstock & Washburn* (*Albert H. Washburn* of counsel) for appellants.
*William L. Wemple*, Assistant Attorney General (*Leland N. Wood* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The appeal here, in the language of the appellants' brief, "challenges the action of the collector in exacting certain charges for the services of watchmen in discharging cargoes of sugar by lighter at the wharves of the appellants." The vessels containing the sugars were entered at the port of New York early in 1910, and the cargoes, within the limits of that port, were transferred to lighters and thence conveyed to the appellants' wharf on the Brooklyn side, almost under Manhattan Bridge, also within the port limits, which wharf is and for many years has been one of the usual and customary places for the discharging of cargoes of sugar at that port.

The express statutory authority which seems to be relied upon for the exaction of these charges is an amendment to Revised Statutes,

———

[1] Reported in T. D. 32362 (22 Treas. Dec., 528).

section 2776. The amendment is contained in section 29 of the act of June 26, 1884. Both are here inserted.

Sec. 2776. Any vessel may proceed with any merchandise brought in her, and, in the manifest delivered to the collector of the customs, reported as destined for any foreign port, from the district within which such vessel shall first arrive to such foreign port without paying or securing the payment of any duties upon such merchandise as shall be actually re-exported in the vessel. But the manifest so declaring to re-export such merchandise shall be delivered to such collector within forty-eight hours after the arrival of the vessel. And the master of such vessel shall give bond as required by the next section.

The amendment:

* * * *Provided*, That vessels arriving at a port of entry in the United States, laden with coal, salt, railroad iron, and other like articles in bulk, may proceed to places within that collection district to be specially designated by the Secretary of the Treasury, by general regulations or otherwise, under the superintendence of customs officers, at the expense of the parties interested, for the purpose of unlading cargoes of the character before mentioned.

Apparently under the assumed authority of this act the following article of the customs regulations was established by the Secretary of the Treasury in 1908:

Art. 88. Whenever a vessel from a foreign country voluntarily arrives within a customs collection district of the United States she shall, under the penalty of forfeiture, make entry at the port of entry for such district and discharge so much of her cargo as is destined therefor. The collector may permit such portions of her cargo as may be in bulk to be unladen at the expense of parties interested and under supervision of customs officers at other places within the district, provided the places have been designated for the purpose by the Secretary of the Treasury.

The particular regulation applicable to this case, the enforcement of which is complained of, was issued by the Treasury Department April 7, 1910, and is as follows:

First. No unlading of sugars or other cargo upon lighters or canal boats will be permitted without the deposit with your office, by the parties interested, of an amount sufficient to cover the expense for the services of the customs watchmen for a period of 10 days.

Second. No such sugars or other cargo may be kept upon the lighters or canal boats for a period exceeding 10 days.

In making these regulations, it is the purpose of the department to restrict, as far as is reasonably practicable, the use of the lighters for transportation, and not to allow their use as warehouses.

You will advise the parties in interest that these regulations will go into effect 10 days from date.

Respectfully,                                    J. F. Curtis, *Assistant Secretary.*

It will be observed that Revised Statutes section 2776 relates to a vessel carrying merchandise reported as destined for a foreign port and obviates the necessity of inquiry or proceedings as to payment of duties, provided the conditions therein prescribed are complied with. The amendment does not seem to be germane to the section, said to be amended, in that it relates to vessels arriving at a port of

entry laden in bulk with merchandise which it is desired to unlade within the collection district.

Since its enactment it appears that the Treasury Department has interpreted the amendment as applying to imported merchandise and so has the Board of General Appraisers. See article 91 of the Customs Regulations of 1892 and 1899, also T. D. 31271.

Aside from this it should be observed that Chapter II of the Revised Statutes gives to the Secretary of the Treasury plenary authority to superintend the collection of duties on imports and tonnage as he shall deem best and to prescribe general rules and regulations, not inconsistent with the law, to prevent frauds upon the revenue and to secure to the Goverment payment of all lawful duties and charges.

Without specifically discussing the same, we think the whole theory of the tariff law is based upon the idea that imported goods arriving by vessel in this country must be unladen before the inspecting, sampling, weighing, or other acts necessary to be performed by the customs officers for the purpose of determining the duties chargeable thereon are commenced. It follows, therefore, that the Government has a right to insist that all imported merchandise shall be landed, as a condition prerequisite to its taking the necessary steps to ascertain the amount of duties. In other words, importers have not a right to insist that their merchandise shall be inspected, examined, sampled, or weighed while afloat upon the importing vessel or other vessels to which it may have been transferred, although the customs officers, under the direction of the Secretary of the Treasury, may have the right to waive the landing in their discretion.

Assuming this to be the law, it follows that the discharge of cargoes upon lighters, whether by permission of the Secretary of the Treasury under authority of the amendment to section 2776, or by virtue of his implied authority under other sections of the statute, is a privilege which may or may not be accorded to importers, and is not something to which as a matter of right they are entitled.

Nor is this conclusion affected by the fact, which is shown, that since about 1883 it has been customary at the port of New York to unload upon lighters many vessels laden with the merchandise in bulk mentioned in the act.

Permission of the proper Government officers in each case to so unload has been obtained, although in such cases the importers have never, until the taking effect of the regulation of April 7, 1910, been required to pay anything by reason of such unloading. This custom has obtained, because the vessels so permitted to unload were tramp steamers having no dock of their own, because there was not room to place the merchandise upon the importer's own dock, or because the laden vessel for other proper reason was unwilling to go to the importer's dock to unload. These permits to unload upon lighters

have been for the benefit and advantage of the importers and not the Government. When lighters are so loaded, Government watchmen are kept thereon until the merchandise is unladen at the dock or wharf, and the necessity and legal right of placing and keeping these watchmen there is not questioned. The time ordinarily required to discharge cargoes, like those here involved, directly from the importing vessel to the dock, is some four or five days. The time taken to discharge like cargoes by means of lighters varies from 4 or 5 days to 18 or 20 days and sometimes more.

It appears, therefore, that the custom of unloading upon lighters has always been permissive, and never under claim of right, and so can not make against the authority of the Secretary of the Treasury to decline to grant the permission whenever he sees fit.

Shortly prior to the regulation of April 7, 1910, the collector of the port of New York had represented to the Secretary of the Treasury that this privilege of lightering was being abused by importers, in that merchandise was kept on the lighters an unreasonable length of time, resulting in unnecessary and considerable expense to the Government, whereupon said regulation was made, and, after 10 days' notice, was put in force.

But the importers contend that under the statute of 1884 the places to be specially designated for unlading cargoes at the expense of parties interested must, while *within* the limits of the *collection district,* be *outside* the limits of the *port of entry.*

We do not think the statute should be so interpreted. It refers expressly to places within the collection district, and as the port of entry in this case is therein, that condition of the law is satisfied.

The importers in this case have asked that lighters instead of a dock be specially designated as a place upon or into which the merchandise may be discharged from the importing vessel. Assuming that unlading in its true sense for tariff purposes means unloading upon land or its equivalent, unloading upon another vessel does not satisfy this requirement. A discharge of the cargo upon lighters would seem therefore to be within the scope of the amendment to section 2776, which provides that vessels therein described may unload the cargoes mentioned therein at a place within the collection district to be specially designated by the Secretary of the Treasury. The unlading for tariff purposes is only accomplished when the merchandise is brought to dock by means of the lighters, as was done in this case, but the importing vessel has been relieved of its cargo at the place where the lighters have received it; that place it seems to us was lawfully designated by the Secretary and the extra expense thereof to the Government is lawfully chargeable to the importers. When the merchandise is discharged from the lighters to the dock it is then unladen, so far as the services of the customs officers are

concerned without expense to the importer in the same manner as it would be if discharged from the importing vessel at its usual, suitable, and customary dock, or at the usual, suitable, and customary dock of the importer.

The importers contend that the exactions in this case are *fees* within the meaning of subsection 21 of section 28 of the tariff act of 1909, which provides:

That all fees exacted * * * by officers of the customs, except as provided in this act, under or by virtue of existing laws, * * * upon the entry of imported goods and the passing thereof through the customs * * * be, and the same are hereby, abolished * * *.

Just what may or may not be fees within the meaning of the subsection may sometimes be difficult of determination, for the reason that while the act itself recognizes (see secs. 14 and 15) that some fees may be exacted, it does not seem to very clearly specify what they are. One indication as to what was contemplated is to be found in the proviso to the subsection, in effect, that where the compensation, in whole or in part, which an officer had received under prior laws, had been derived from fees, such officer should thereafter receive an equivalent salary in lieu thereof.

This would suggest that all such compensatory fees, so far as related to "the entry of imported goods and the passing thereof through the customs" were abolished.

In United States *v.* Jahn (65 Fed. Rep., 792), weighing and gauging fees upon merchandise entered for export were held abolished by section 22 of the customs administrative act of 1890, which is the predecessor of the section under consideration. It was found in the case that such charges had in customs practice and in the statutes been denominated as fees.

Various other cases, principally decisions of the Board of General Appraisers, have been referred to, which discuss some phases of the question of what are fees within the meaning of subsection 21, among which are T. D. 15026, T. D. 15476, T. D. 15577, T. D. 18233, T. D. 19946, and T. D. 31271. They all impress us to be in harmony with the idea that the fees referred to are such as are contemplated as having accrued under prior laws relating to entry and passing through the customs *in the ordinary course of customs procedure*, but that when an importer solely for his own benefit adopts an unusual course, one that he can only take by the express permission of the customs officers, the added expense thereof to the Government is not a fee within the meaning of the subsection.

In this case the importers, for reasons sufficient to themselves, saw fit, instead of adopting the ordinary course of unlading at their own docks, to ask and obtain permission to adopt another method. It was granted upon the condition that they pay for the privilege.

They could have unloaded at dock and the expense of the character here involved, though less in amount, would have been borne by the Government. They have preferred to take the other course, knowing these charges would be made, have been benefited by the course adopted, and would seem to be justly compelled to pay the additional expense to the Government thereby accruing. Kennedy v. Magone (41 Fed. Rep., 768); Hempstead v. Cadwalader (42 Fed. Rep., 529).

We do not think it can be said that these added expenses accrued in the entry and passing of the goods through the customs. They were not connected with the entry. They were not connected with the passing through the customs, because that does not begin until the merchandise is landed, when the customs officers may examine, inspect, gauge, and weigh the same.

We think, as was held by the board in T. D. 31271, and which it relied upon as a precedent for its decision in the case at bar, that the collector is authorized under the direction of the Secretary of the Treasury to require the importer to pay all the extraordinary expenses incurred by the Government which were incident to the landing of the merchandise by means of lighters instead of at the dock. It is a reimbursement for extra expense occasioned the Government thereby, and not a fee that is prohibited.

It is not claimed here that if charges of the character are authorized those exacted in this case are excessive.

The judgment of the Board of General Appraisers is *affirmed*.